Molly Joel COYE, M.D., M.P.H.,* as Director of Health Services for the State of California; State of California, a Sovereign State; State Department of Health Services, a state agency, Plaintiffs–Appellants,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; Louis W. Sullivan, M.D., as Secretary of Health and Human Services for the United States, Defendants–Appellees.

No. 91–15381.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1992.

Decided Aug. 25, 1992.

---

* Molly Joel Coye is substituted for her predecessor Kenneth Kizer as Director of Health Services of the State of California. Fed.R.App.P. 43(c)(1).

Dennis Eckhart, Deputy Atty. Gen., Sacramento, Cal., for plaintiffs-appellants.

Frank A. Rosenfeld, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before SCHROEDER, LEAVY, and RYMER, Circuit Judges.

SCHROEDER, Circuit Judge:

The plaintiffs, the State of California and the California Director of Health and Human Services, appeal the district court's summary judgment in favor of the Secretary of the United States Department of Health and Human Services (the Secretary). The plaintiffs filed this action to challenge the Secretary's disallowance of approximately twelve million dollars in federal Medicaid funds which had been paid to California for medical services rendered to undocumented aliens. The plaintiffs argue that the federal regulation relied upon by the Secretary, 42 C.F.R. § 435.402(b), re- stricting Medicaid coverage to U.S. citizens and legal resident aliens, was invalid and unenforceable because the Secretary had no statutory authority to impose such an alienage restriction. We affirm the district court because we hold that the regulation is a valid implementation of congressional intent embodied in the Social Security and Medicaid statutory scheme.

In 1965, Congress enacted Medicaid to enable states, as far as practicable, to furnish medical assistance to persons whose income and resources were insufficient to meet necessary medical costs. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* Medicaid continues to operate as a cost-sharing program that promises federal funds to states that provide medical care to qualifying low income patients. In all years relevant to this appeal, the statute did not expressly state that undocumented aliens were either eligible or ineligible for Medicaid assistance. 42 U.S.C. §§ 1396 *et seq.* The majority of those who qualify for Medicaid assistance, however, do so because they are eligible for federal cash assistance programs, the most important of which are Aid to Families with Dependent Children (AFDC) and Supplemental Security Income (SSI). Assistance under these programs is not available to undocumented aliens. 42 U.S.C. § 602(a)(33) (AFDC); 42 U.S.C. § 1382c(a)(1)(B)(i) (SSI).

In 1973, the Secretary adopted a regulation which required state Medicaid agencies to provide Medicaid to:

(a) Citizens; or

(b) Aliens lawfully admitted for permanent residence or permanently residing in the United States under color of law, including any alien who is lawfully present in the United States under section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act.

42 C.F.R. § 435.402(b).[1] The regulation precluded federal funding for Medicaid expenditures attributable to care given undocumented aliens. The plaintiffs chal-

1. This regulation is now codified at 42 U.S.C. § 1396b(v) and the regulatory section number

reserved for future use.

lenge this complete denial of Medicaid benefits, arguing that the Secretary exceeded his authority in promulgating the regulation because it was not consistent with the history and structure of the Medicaid statute.

During the years relevant to this case, 1976–1985, California did restrict Medicaid benefits to United States citizens and aliens who had either been lawfully admitted as permanent residents, or were permanently residing in the United States under color of law (PRUCOL). If an alien's legal status was unknown, however, California made Medicaid benefits available if the alien certified, under penalty of perjury, that one of the following was true:

1. Named alien is in the country legally and allowed to remain indefinitely,
2. Named alien is not under order of deportation,
3. Named alien is married to a person in the U.S. who is not under order of deportation, or
4. Named alien has submitted to the county welfare department affidavits from two U.S. citizens attesting to the named alien's continuous residence in the U.S. for five years or more.

California Welfare and Institutions Code § 14007.5. Pending verification of the alien's immigration status with the Immigration and Naturalization Service, medical treatment was provided and the state claimed federal participation funds. When the INS determined that a particular alien did not meet either the permanent legal resident requirement or the PRUCOL requirement, Medicaid eligibility was terminated prospectively.

California claimed and received federal funds for benefits paid to undocumented aliens while their status was being verified. These are the funds that the Secretary of H.H.S. now claims. This case is thus about interim payments made by the State of California, and funded by the federal government, during the verification process, for persons who were eventually determined ineligible because they were undocumented aliens.

Over the years, the federal government stated its position clearly and unambiguously. The regulation promulgated by the Secretary in 1973 described eligible Medicaid recipients as citizens, lawful permanent residents, or PRUCOL. 42 C.F.R. § 435.402(b). Further, in November of 1977, state agencies received an "action transmittal" from the Department of Health and Human Services advising states to verify Medicaid applicants' citizen/alien status. The communication warned state agencies that federal matching funds were available for medical expenses paid during the verification process only if the individual receiving the medical care was subsequently found to meet the lawful resident requirement.

The instant suit was instituted by the State of California in response to two formal letters of disallowance from the Secretary of Health and Human Services. These letters were sent pursuant to the Secretary's determination that California would not be allowed to retain federal funds for approximately $12,000,000 in Medicaid benefits delivered to undocumented aliens between 1976 and 1985. The first audit revealed $1,962,362 in disallowable claims and the second audit revealed $10,233,580 in disallowable claims.

The specific question we must resolve in this case is whether California validly expended federal funds to provide Medicaid benefits to undocumented aliens prior to verification of their unlawful status. Both sides agree that the answer to this question depends upon the validity of the 1973 regulation barring federal Medicaid funding to undocumented aliens.

In this appeal, California relies principally upon the opinion and reasoning of the district court in *Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y.1986). The district court there held that the regulation barring Medicaid benefits to aliens was contrary to the Medicaid statute, because for some categories of Medicaid recipients, Congress did not expressly limit Medicaid payments to citizens and documented aliens. Our examination of the Medicaid statute, together with the underlying Social Security

classifications on which eligibility is based, convinces us, however, that Congress originally intended to render undocumented aliens ineligible for Medicaid in all classifications. The 1986 amendment permitting emergency Medicaid benefits for undocumented aliens alleviates some of the harshness of that policy, 42 U.S.C. § 1396b(v), but does not undermine our conclusion that such a policy, excluding undocumented aliens from all benefits, was embodied in the statutes controlling this case.

The Medicaid statute provides that Medicaid payments are to be made to certain classifications of persons, and an understanding of those classifications is critical to this case. Medicaid beneficiaries may be roughly divided into three categories: the mandatory categorically needy, § 1396a(a)(10)(A)(i), the optionally categorically needy, § 1396a(a)(10)(A)(ii), and the medically needy, § 1396a(a)(10)(C).[2]

The mandatory categorically needy include all individuals receiving benefits under specified federal cash assistance programs. § 1396a(a)(10)(A)(i). These cash assistance programs include AFDC (subchapter IV), SSI (subchapter XVI), Aid to the Blind (subchapter X), Aid to the Permanently and Totally Disabled (subchapter XIV) and Old Age Assistance for Puerto Rico, Guam, and the Virgin Islands (subchapter I). Medicaid benefits thus automatically accompany receipt of such cash assistance. Undocumented aliens cannot qualify for Medicaid benefits under the mandatory categorically needy classification, however, because the cash assistance programs statutorily restrict benefits to citizens, lawful permanent residents, and PRUCOL. *See* 42 U.S.C. § 602(a)(33) (AFDC); 42 U.S.C. § 1382c(a)(1)(B)(i) (SSI).

Under the optionally categorically needy classification, each state has the option of extending Medicaid benefits to specific categories of individuals. Coverage under this category is limited to eleven subcategories that describe particular, and gener-

ally narrow, basis for Medicaid eligibility. § 1396a(a)(10)(A)(ii)(I)–(XI). For example a state could extend Medicaid benefits under the optionally categorically needy classification to persons who, if work-related child care expenses were deducted from their earnings, could meet the income and resource restrictions of AFDC. § 1396a(a)(10)(A)(ii)(II). Similarly, a state could extend Medicaid benefits to individuals who would be eligible for cash assistance under federal law, but do not meet the income and resource restrictions of a more stringent state plan. § 1396a(a)(10)(A)(ii)(III).

Subparts (I), (II) and (V) of the optionally categorically needy classification provide:

(ii) at the option of the State, [Medicaid payments may be provided] to any group or groups of individuals described in section 1396d(a) of this title ... who are not individuals described in clause (i) of this subparagraph but—

(I) who would meet the income and resources requirements of the appropriate State plan described in clause (i) or the supplemental security income programs (as the case may be),

(II) who would meet the income and resources requirements of the appropriate State plan described in clause (i) if their work-related child care costs were paid from their earnings rather than by a State agency as a service expenditure,

.     .     .     .     .

(V) who are in a medical institution for a period of not less than 30 consecutive days (with eligibility by reason of this subclause beginning on the first day of such period), who meet the resource requirements of the appropriate State plan described in clause (i) or the supplemental security income program, and whose income does not exceed a separate income standard established by the State which is consistent with the limit established under section 1396(f)(4)(C).

---

**2.** All section references contained in this opinion are to Title 42 of the United States Code unless otherwise stated.

Subpart (I) thus is essentially a safety net that allows states to extend Medicaid benefits to individuals who are needy but do not qualify for cash assistance because of an economic or related circumstance having nothing to do with citizenship. For example, the spouse of an SSI recipient would not be eligible for Medicaid in conjunction with a cash assistance program, § 1396a(a)(10)(A)(i), even if he or she met the income and resource restrictions of the SSI program. Under the optionally categorically needy section, a state could choose to provide Medicaid coverage in such a situation. § 1396a(a)(10)(A)(ii)(I). Subparts (II) and (V) similarly extend Medicaid coverage to persons who come very close to qualifying for cash assistance, but for narrow and specific reasons (child care expenses, hospitalization), do not qualify.

The medically needy comprise the third group of Medicaid eligible individuals. § 1396a(a)(10)(C). The medically needy classification permits the states, at their option, to provide Medicaid to individuals whose income and/or resources are slightly higher than the cash assistance eligibility levels. Although these individuals do not categorically qualify for Medicaid, the state may still recognize that they lack sufficient income and/or resources to pay their medical bills and provide coverage. Should a state decide to extend benefits to the medically needy, the statute expressly lists particular individuals who must be covered (e.g. children and pregnant women), and instructs the state that the plan must include a description of the eligibility criteria, the amount, duration, and scope of medical benefits, and the income standard to be employed for determining eligibility. § 1396a(a)(10)(C)(i).

The optionally categorically needy and the medically needy categories as described in the statute do not all contain express legal residence or PRUCOL eligibility requirements. A few of the subsections defining those categories import alienage restrictions applicable to cash assistance programs, *see* § 1396a(a)(10)(A)(ii)(III) and (IV), but most do not. In making their argument, the plaintiffs point to the ab-

sence of an express (or imported) alienage restriction in subparts (I), (II) and (V) of the optionally categorically needy section of the statute. § 1396a(a)(10)(A)(ii)(I)(II) & (V). They also point out that the optional coverage for the medically needy, § 1396a(a)(10)(C), similarly contains no express limitation to citizens or lawful residents.

The plaintiffs ask us to hold that because some of the optional categories contain no express (or imported) alienage restriction, Congress must have intended to allow Medicaid benefits to undocumented aliens under all classifications. They ignore the fact that Medicaid is built upon the requirements for cash assistance payments.

Contrary to the contention of the State, the limited categories permitting states to provide Medicaid coverage to those who would not otherwise qualify for cash assistance, do not authorize payment of Medicaid benefits to undocumented aliens. The limited categories authorize states to broaden, slightly, the pool of individuals eligible for Medicaid based upon particular criteria selected by Congress. Implicit in the limited extension of Medicaid benefits to persons with particular disqualifying characteristics (age, income, resources . . .), is the requirement that all other general qualifying criteria continue to apply. There is no basis for holding that in creating these limited categories, Congress intended to make Medicaid benefits available to undocumented aliens who, if they had fewer assets or resources, so as to meet the financial eligibility requirements of the mandatory categorically needy, could not qualify for Medicaid benefits. In promulgating the regulation in question, the agency was in effect clarifying what was implicitly intended by Congress in the statute, and was not usurping its function.

AFFIRMED.